DAYTON BAR ASSOCIATION *v.* GERREN.

[Cite as *Dayton Bar Assn. v. Gerren,*
110 Ohio St.3d 297, 2006-Ohio-4482.]

(No. 2006–0442—Submitted April 25, 2006—Decided September 13, 2006.)

———————

**Per Curiam.**

{¶ 1} Respondent, Nicholas L. Gerren Jr. of Dayton, Ohio, Attorney Registration No. 0032341, was admitted to the practice of law in Ohio in 1973. On August 18, 2004, we suspended respondent's license to practice for six months because he withdrew for his own use settlement funds set aside to pay his client's medical

expenses. See *Dayton Bar Assn. v. Gerren*, 103 Ohio St.3d 21, 2004-Ohio-4110, 812 N.E.2d 1280. He was reinstated to the practice of law on April 1, 2005. See *Dayton Bar Assn. v. Gerren*, 105 Ohio St.3d 1220, 2005-Ohio-1737, 825 N.E.2d 609.

{¶ 2} On June 13, 2005, relator, Dayton Bar Association, charged respondent in a five-count complaint with violations of the Code of Professional Responsibility. The parties stipulated that respondent had committed misconduct in connection with Counts I through IV, and relator agreed to dismiss Count V. A panel of the Board of Commissioners on Grievances and Discipline heard the cause on December 20, 2005, and, accepting the stipulations, made findings of misconduct and a recommendation, which the board adopted.

## Misconduct

{¶ 3} Count I alleged that respondent had neglected an estate, allowing it to languish for years in probate court. Count II alleged respondent's inadequate representation of a client in a claim for wrongful termination of employment. Count III alleged respondent's failure to inform several clients that he lacked professional-liability insurance. Count IV alleged respondent's failure to report a retainer fee received from clients in bankruptcy.

{¶ 4} As to Count I, the board found that respondent agreed to oversee the administration of the John W. Koen estate. Respondent applied for authority to administer the estate on April 7, 1997. Objections to the appointment of a fiduciary initially delayed the administration for approximately one year, but the Montgomery County Probate Court approved the required sale of a family home in March 1999 as part of the estate administration.

{¶ 5} Respondent did not commence an action to sell the property until April 11, 2000, and his delay led to two contempt citations against the fiduciary and the fiduciary's removal. The fiduciary was eventually reinstated, and the property was sold, but some documents relating to the sale had still not been filed more than two years later. Because of respondent's inaction, the probate court declared in August 2003 that it would report his neglect to relator if respondent did not complete the sale and file a final accounting within 14 days of the court's order. Respondent did not respond, and the court alerted the disciplinary authorities.

{¶ 6} In December 2003, respondent promised relator's investigator that he would complete administration of the Koen estate by the end of the year. The investigator allowed respondent more time, but respondent was unable to finish the work even though what was left was relatively small and uncomplicated. Anticipating our order suspending his license to practice, respondent withdrew

from his representation in the Koen estate on August 13, 2004. Volunteer lawyers have since agreed to complete administration of the estate.

{¶ 7} Respondent stipulated and the board found that he had violated DR 6–101(A)(3) by neglecting to close the Koen estate and that he had thereby prejudiced the administration of justice, a violation of DR 1–102(A)(5). Respondent also admitted and the board found that he had intentionally failed to carry out a contract with a client for his professional services, a violation of DR 7–101(A)(2).

{¶ 8} As to Count II, the board found that Brian Wade retained respondent in April 2000 to pursue a claim of wrongful termination from employment. Wade paid respondent $7,500. Respondent considered the viability of the claim and concluded that it had no merit. He did not report his conclusion to his client, however, and the client had no opportunity to consult other counsel before the statute-of-limitations period elapsed.

{¶ 9} Respondent stipulated and the board found that his inaction in Wade's case constituted violations of DR 6–101(A)(3) and 7–101(A)(1), which requires a lawyer to carry out a client's lawful objectives through reasonably available, lawful means.

{¶ 10} As to Count III, the board found that while representing Brian Wade and also while representing Keith and Jessie Buckholz, respondent had no professional-liability insurance. DR 1–104 requires that a lawyer carry sufficient malpractice insurance or disclose to clients that he does not. Respondent also stipulated and the board found that he had violated DR 1–104.

{¶ 11} As to Count IV, the board found that respondent agreed to represent Brian Wade and his wife in filing personal bankruptcy. Respondent filed a petition for Chapter 7 relief for the couple on December 15, 2000, after he had accepted the $7,500 fee to represent Wade in his wrongful-termination claim. Respondent was required to disclose but did not disclose to the bankruptcy court that he was in possession of these funds. Moreover, after he refunded Wade's money, respondent did not amend filings in that court to reflect that disposition.

{¶ 12} Respondent stipulated and the board found that he had damaged his clients during their professional relationship, a violation of DR 7–101(A)(3).

### Recommended Sanction

{¶ 13} In recommending a sanction for respondent's misconduct, the board considered his background and weighed the aggravating and mitigating factors of his case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 14} For most of his career, respondent has been a sole practitioner, having had only the occasional assistance of a paralegal. Over the years, he has referred matters outside of his expertise and practice area to other attorneys. During 2002, respondent ran for state representative and virtually abandoned his law practice while campaigning.

{¶ 15} As an aggravating factor, the board found that respondent had a recent history of professional discipline. BCGD Proc.Reg. 10(B)(1)(a). Respondent failed to retain funds entrusted to him from a settlement so that his client could pay the subrogation claim of the client's health-care provider. *Dayton Bar Assn. v. Gerren*, 103 Ohio St.3d 21, 2004-Ohio-4110, 812 N.E.2d 1280. Respondent held the funds for several years, but then used the money for his personal expenses. Respondent realized the impropriety of his actions and ultimately paid the health-care claim.

{¶ 16} The board also found as an aggravating factor that respondent's misconduct involved multiple offenses. BCGD Proc.Reg. 10(B)(1)(d). Respondent blatantly neglected the Koen estate, disregarded the statute of limitations in Wade's wrongful-termination case, failed to alert Wade and other clients that he had no malpractice coverage, and did not disclose the fee in his possession in the Wade bankruptcy. Respondent attributed some of his inaction to his preoccupation with defending against relator's first professional-misconduct complaint, but he mainly blamed his ineffective office management and overwhelming professional and personal responsibilities.

{¶ 17} In mitigation, the board found that respondent had not acted dishonestly or with a selfish motive. BCGD Proc.Reg. 10(B)(2)(b). Respondent was also completely forthcoming during the disciplinary proceedings, BCGD Proc.Reg. 10(B)(2)(d), and expressed his deep regret for the harm he has caused and his poor example. Respondent promised never to repeat his transgressions if he was ever permitted to practice law again and promised to "maintain the positive dignity of the profession."

{¶ 18} Respondent also referred, as an explanation rather than an excuse, to the personal tribulations he experienced in 2003. These trials, mentioned first in *Dayton Bar Assn. v. Gerren*, 103 Ohio St.3d 21, 2004-Ohio-4110, 812 N.E.2d 1280, ¶ 5, included his divorce, his father's serious illness, his father's death, and other problems that led him to seek professional treatment for depression. Respondent began seeing a counselor for depression after he began serving his six-month suspension and has continued his treatment. But at the panel hearing, respondent candidly testified that his depression did not contribute to the misconduct charged in relator's second complaint, and therefore should not be considered mitigating under BCGD Proc.Reg. 10(B)(2)(g). Respondent then

accepted complete responsibility for the ethical lapses at bar, all of which occurred prior to his six-month suspension.

{¶ 19} Adopting the panel's report, the board concluded that mitigating factors far outweighed the aggravating factors. The board thus accepted the stipulated sanction and recommended that respondent be suspended from the practice of law for 18 months, with the last six months to be stayed on the conditions that (1) he complete six hours of continuing legal education in law-office management during the 12-month actual suspension and (2) he be assigned a monitoring attorney to help him manage his office practice for six months after any reinstatement. The board also recommended, as did the panel, that respondent be ordered to continue mental-health treatment and, at the end of his 18-month suspension, to provide a report from a mental-health-care professional regarding his commitment to treatment and ability to competently and ethically practice law.

Review

{¶ 20} We agree that respondent violated DR 1–104, 6–101(A)(3), 1–102(A)(5), 7–101(A)(1), 7–101(A)(2), and 7–101(A)(3), as found by the board. We also find the recommended sanction appropriate; however, we add restitution as a condition for staying the last six months of the 18–month suspension.

{¶ 21} Brian Wade sued respondent for malpractice after respondent allowed the statute of limitations for Wade's wrongful-termination case to expire. Respondent did not answer the malpractice complaint, and a default judgment was entered in Wade's favor. At the panel hearing, respondent admitted that he owed Wade $20,000 in damages.

{¶ 22} Wade attempted to collect this judgment, but respondent has been unable to pay. In fact, respondent testified that he had sought federal bankruptcy protection and that, although he had filed bankruptcy for reasons in addition to Wade's $20,000 judgment against him, he had listed this debt for discharge.

{¶ 23} Restitution is often made a condition of reinstatement to the practice of law in Ohio, and it would further respondent's rehabilitation in this case. In *Cleveland Bar Assn. v. Gay* (2002), 94 Ohio St.3d 404, 763 N.E.2d 585, however, we found that a lawyer had qualified for reinstatement after an indefinite suspension, notwithstanding that a bankruptcy court had discharged the $50,000 judgment debt we had ordered him to pay as restitution. We excused the lawyer's compliance with our order pursuant to Section 525(a), Title 11, U.S.Code, which prohibits a governmental unit from refusing to renew a license or other similar grant for the reason that the applicant has sought bankruptcy protection or has not paid a debt that was discharged. Id. at 405, 763 N.E.2d 585. In accordance with *Gay*, respondent must pay the $20,000 judgment against him,

providing the debt has not been discharged in bankruptcy, to qualify for the stay of the suspension ordered today.

{¶ 24} Respondent is therefore suspended from the practice of law in Ohio for 18 months; however, the last six months of the suspension are stayed on the conditions that respondent (1) complete six credit hours of continuing legal education in law-office management during the 12–month actual suspension, (2) if reinstated, serve a six-month probation pursuant to Gov.Bar R. V(9), including cooperation with a monitoring attorney, appointed by relator, to help him manage his office practices, (3) continue mental-health treatment and, prior to filing an application for reinstatement, provide a report from a mental-health-care professional regarding his prognosis and ability to competently and ethically practice law, and (4) pay $20,000 in restitution to Brian Wade, with interest at the judgment rate from the date of the order awarding this amount, before the 12–month actual suspension ends, unless the debt is discharged in bankruptcy in the interim. If respondent fails to comply with the conditions of the stay, the stay will be lifted and respondent shall serve the entire 18–month suspension.

{¶ 25} Costs are taxed to respondent.

Judgment accordingly.

Moyer, C.J., Resnick, Pfeifer, Lundberg Stratton, O'Connor, O'Donnell and Lanzinger, JJ., concur.

———

L. Anthony Lush, for relator.

Nicholas L. Gerren Jr., pro se.