Benson A. Wolman, for respondent.

DISCIPLINARY COUNSEL *v.* ROBERTSON.

[Cite as *Disciplinary Counsel v. Robertson,*
113 Ohio St.3d 360, 2007-Ohio-2075.]

(No. 2006–1638—Submitted January 9, 2007—Decided May 16, 2007.)

**Per Curiam.**

{¶ 1} Respondent, Jerry D. Robertson of Thornton, Colorado, Attorney Registration No. 0003321, was admitted to the practice of law in Ohio in 1974. The Board of Commissioners on Grievances and Discipline recommends that we indefinitely suspend respondent's license to practice based on findings that he misappropriated clients' funds, improperly entered into business transactions with clients, created conflicts of interest, failed to properly account for his clients' money, and committed other unethical acts. For the reasons that follow, we find that respondent violated the Code of Professional Responsibility and that an indefinite suspension is appropriate.

Misconduct

{¶ 2} In a four-count complaint, relator, Disciplinary Counsel, charged respondent with multiple violations of the Disciplinary Rules.

*Count I*

{¶ 3} Respondent admitted and we find that he violated DR 4–101(B)(3) (a lawyer shall not knowingly use a client confidence or secret to his own advan-

tage), 5–101(A)(1) (a lawyer shall not accept employment if the exercise of professional judgment will or reasonably may be affected by the lawyer's interests), 5–104(A) (a lawyer shall not enter into a business transaction with a client without full disclosure of the attendant risks), 9–102(B)(1) (a lawyer shall promptly notify a client upon the receipt of client funds or property), 9–102(B)(2) (a lawyer shall safeguard a client's property in the lawyer's possession), and 9–102(B)(3) (a lawyer shall maintain complete records of a client's property in his possession) while representing an elderly female client.

{¶ 4} Respondent assisted his client with her estate planning and acted under a power of attorney. In 2002, respondent kept a sum of cash and three jars of coins that the client's former landlord had found after the client moved to a nursing home. Respondent paid at least some of the money to his client, but could not account for it, and by the time she died in November 2004, he no longer had the cash or the coins.

{¶ 5} Respondent also improperly borrowed money from his client. In 2003, after the client expressed concern about her financial situation, respondent promised to provide a preferential interest rate on loans to him. In the months before her death, respondent borrowed a total of $69,289.38 and used the money, in effect, as a line of credit to pay his personal and business expenses. In 2004, respondent personally executed unsecured promissory notes for $40,000 and $28,000, payable on demand at an annual interest rate of five percent. He conceded that he did not urge his client to seek independent counsel before entering into these transactions, nor did he obtain his client's consent to the transactions after full disclosure of the attendant risks.

{¶ 6} On October 21, 2004, just before the client's death, respondent deposited $70,391.88, which he had obtained by cashing in various investments, into the bank account established through the power of attorney.

### Count II

{¶ 7} Respondent admitted and we find that he violated DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law), 4–101(B)(3), 5–101(A)(1), and 5–104(A) while representing the estate of another former client.

{¶ 8} The client died in May 2002, and respondent served as attorney for his estate, of which the client's son was a beneficiary. The estate contained approximately $550,000 in assets. After the client's death, respondent persuaded the client's son to establish a living trust for the estate assets and to appoint respondent and the son as cotrustees.

{¶ 9} Between March 2003 and October 2004, respondent improperly withdrew $41,284.91 from the trust by drafting checks made payable to him or his

creditors. The client's son did not specifically recall granting permission for these withdrawals, but he also did not dispute that he may have agreed to lend respondent money. Respondent apparently considered this transaction an unsecured loan but did not document the agreement with promissory notes. Respondent admitted that he did not urge the son to seek independent counsel prior to the transaction or obtain the son's consent only after full disclosure of the attendant risks.

## Count III

{¶ 10} Respondent admitted and we find that he violated DR 2–106(A) (a lawyer shall not charge or collect a clearly excessive fee), 9–102(B)(3), and 9–102(B)(4) (a lawyer shall promptly pay or deliver to the client all client funds and property in his possession) while representing a third client.

{¶ 11} In January 2004, this client learned that she had been named beneficiary of an annuity, and she asked respondent to represent her in regard to the annuity. The client later received a check for $36,427 in death benefits. She endorsed the check on May 9, 2004, and respondent deposited the check in his client trust account. That same day, respondent wrote a $9,107 check to himself from the client trust account, which he claims was for services already performed and not charged and for undetermined services to be performed in the future. After the client died in February 2005, respondent could document having earned only $350 of his $9,107 fee.

## Count IV

{¶ 12} Respondent admitted and we find that he violated DR 9–102(B)(2) and 9–102(B)(3) in managing his client trust account. Before respondent closed his client trust account in April 2004, checks were written on the account to pay an office supply company for client bookkeeping materials. Respondent conceded that he did not monitor his staff in managing these financial records.

## Sanction

{¶ 13} Respondent objects to the board recommendation to indefinitely suspend, arguing in favor of the two-year suspension to which the parties stipulated. He first claims a violation of his due process right to fair notice and hearing, asserting that the board in effect found a violation of DR 1–102(A)(4) (a lawyer shall not engage in conduct involving fraud, deceit, dishonesty, or misrepresentation) after dismissing the charge, consistent with the parties' stipulations, for lack of the requisite clear and convincing evidence. Respondent next argues that the board used this finding to justify a harsher sanction than the one to which the parties had agreed. Relator responds that an indefinite suspension is appropriate even without reliance on the dishonesty found by the board.

{¶ 14} We agree that respondent's admitted violations of the Disciplinary Rules, standing alone, warrant an indefinite suspension. We have too often seen cases like this, in which a lawyer "borrows" money from a client in complete disregard of the duties to safeguard and account for entrusted client funds. We have not tolerated such self-dealing from this profession.

{¶ 15} In *Cincinnati Bar Assn. v. Rothermel*, 104 Ohio St.3d 413, 2004-Ohio-6559, 819 N.E.2d 1099, we censured a lawyer for using "borrowed" money to pay his personal office and living expenses. That lawyer lent himself over $12,000 from funds he held in trust for a client, making a series of 15 withdrawals over ten months without advising his client of their conflicting interests, obtaining her informed consent, or suggesting that the client seek other counsel to protect her interests. Id., ¶ 8. We decided to indefinitely suspend rather than disbar, however, because the lawyer had cooperated in the disciplinary process, admitted misconduct, shown support from clients and colleagues, and repaid misappropriated funds.

{¶ 16} Similarly, in *Disciplinary Counsel v. Nagorny*, 105 Ohio St.3d 97, 2004-Ohio-6899, 822 N.E.2d 1233, we indefinitely suspended the license of a lawyer who "borrowed" $141,000, without any semblance of authority, from an incompetent client's guardianship estate. That lawyer used the funds to purchase stocks and investments in his own name, hoping to earn enough to profit personally and repay the guardianship estate with interest. We also did not disbar that lawyer, however, citing the mitigating evidence that he had no prior disciplinary record, he had cooperated in the disciplinary process, he regretted his misconduct, and he had completely repaid the client's estate with interest.

{¶ 17} We found violations of the DR 9–102(B)(3) accounting requirements in *Rothermel* and *Nagorny* and also found, along with other misconduct, that those lawyers had acted deceitfully or dishonestly in violation of DR 1–102(A)(4). We do not find a DR 1–102(A)(4) violation here, but that does not diminish the gravity of respondent's misconduct. A lawyer's misuse of entrusted funds for any reason undermines the duty of loyalty that a lawyer owes as a fiduciary to the client. The breach is serious and warrants a commensurate sanction regardless of whether the lawyer also intended to deceive or cheat the client in the process. Accord *Dayton Bar Assn. v. Gerren*, 103 Ohio St.3d 21, 2004-Ohio-4110, 812 N.E.2d 1280, ¶ 11 ("even without dishonesty or deceit, misappropriation of [a] client's money can warrant the indefinite suspension of an attorney's license").

{¶ 18} To complete our review, we consider respondent's background and the mitigating and aggravating facts of his case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 19} Respondent has sold his practice and no longer practices law. Respondent had practiced for years as a certified specialist in estate planning and trust and probate law. He also served for 16 years as law director for the village of Oak Harbor.

{¶ 20} In mitigation, the parties stipulated that respondent had no disciplinary record and that by repaying with interest the money he took in the Count I and Count II cases, he had begun to rectify the consequences of misconduct. See BCGD Proc.Reg. 10(B)(2)(a) and (c). Respondent also cooperated completely during the disciplinary proceedings, conceding his wrongdoing, and submitted 12 letters supporting his good character apart from the underlying events. BCGD Proc.Reg. 10(B)(d) and (e). The letters described respondent as having a personal and professional reputation in the community for competence, integrity, and compassion, and some recounted his pro bono work. The parties did not identify any aggravating factors.

{¶ 21} These same considerations worked to the lawyer's advantage in *Rothermel* and *Nagorny* and dissuaded us from imposing our strictest sanction. Consistent with that authority, we now overrule respondent's objections and accept the board's recommendation. Respondent is therefore indefinitely suspended from the practice of law in Ohio.

{¶ 22} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., PFEIFER, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

LUNDBERG STRATTON, J., dissents.

---

**LUNDBERG STRATTON, J., dissenting.**

{¶ 23} I respectfully dissent because I believe that the circumstances of this case warrant only a two-year suspension. The respondent practiced law for almost 30 years with no disciplinary proceedings. He submitted 12 letters in support of his good character and personal and professional reputation. He admitted that his conduct was wrong. He repaid the money he had taken and cooperated throughout the disciplinary proceedings. In addition, he has moved outside of Ohio and no longer practices law. The Disciplinary Counsel even stipulated that the appropriate sanction in this case was a two-year actual suspension.

{¶ 24} The majority relies on *Cincinnati Bar Assn. v. Rothermel*, 104 Ohio St.3d 413, 2004-Ohio-6559, 819 N.E.2d 1099, and *Disciplinary Counsel v. Nagorny*, 105 Ohio St.3d 97, 2004-Ohio-6899, 822 N.E.2d 1233, in support of an indefinite suspension because they involved similar circumstances of "borrowing"

money from elderly clients. We decided to indefinitely suspend those respondents rather than disbar. But as the majority points out, both Rothermel and Nagorny had also violated DR 1–102(A)(4), which prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation. Here, there was no such violation. In addition, at no time was disbarment even recommended in this case. Therefore, I do not agree that *Rothermel* or *Nagorny* supports the sanction in this case.

{¶ 25} Because I agree with the stipulated sanction of a two-year suspension, I respectfully dissent.

---

Jonathan E. Coughlan, Disciplinary Counsel, Lori J. Brown, First Assistant Disciplinary Counsel, and Carol A. Costa, Assistant Disciplinary Counsel, for relator.

Arnold, Caruso, Green, & Belazis, Ltd., and James D. Caruso, for respondent.