DISCIPLINARY COUNSEL *v.* STREETER.

[Cite as *Disciplinary Counsel v. Streeter,* 138 Ohio St.3d 513, 2014-Ohio-1051.]

*Attorneys—Misconduct—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation and in conduct adversely reflecting on fitness to practice law—Two-year suspension, 18 months stayed on conditions.*

(No. 2013-0581—Submitted September 11, 2013—Decided March 25, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 12-055.

_____

**Per Curiam**.

{¶ 1}   Respondent, David Allen Streeter Jr. of Cleveland, Ohio, Attorney Registration No. 0073936, was admitted to the practice of law in Ohio in 2001.

{¶ 2}   In an August 2012 complaint, relator, disciplinary counsel, alleged that Streeter misappropriated more than $230,000 in funds from real estate closings that he conducted in the operation of his business, Statewide Title Agency, Ltd.  The parties submitted a timely consent-to-discipline agreement, but the panel rejected the agreement and set the matter for hearing.

{¶ 3}   At the hearing, the parties submitted stipulations of fact and misconduct in which Streeter acknowledged that his conduct violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).  They also submitted eight stipulated exhibits, one of which contained more than 80 letters commending Streeter's good character and reputation in his community.  Having considered this evidence and the testimony

of Streeter and his friend and former counsel, James Marniella, the panel adopted the parties' stipulations. Finding a strong similarity between the conduct and mitigating factors present in this case and those present in *Disciplinary Counsel v. Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, the panel felt constrained to impose the same sanction that we had imposed in that case—a two-year suspension, all stayed on conditions. The board adopted the panel's findings of fact and misconduct and recommended sanction.

{¶ 4} Relator objects to the board's recommended sanction, arguing that the facts of this case distinguish Streeter's conduct from that of Edwards. Because Streeter misappropriated more than three times the money that Edwards did, engaged in a Ponzi-like scheme to conceal his thefts, and did not promptly own up to his misconduct, relator contends that his conduct warrants an actual suspension from the practice of law. Relator suggests that the appropriate sanction is a two-year suspension, with 18 months stayed on the conditions recommended by the board. We adopt the board's findings of fact and misconduct, but sustain relator's objection to the recommended sanction and suspend Streeter from the practice of law for two years, with 18 months stayed on the conditions recommended by the board.

**Misconduct**

{¶ 5} Streeter testified that after completing law school in 2001, he became an associate at a law firm focusing on business transactions and probate matters. Approximately one year later, the firm opened Statewide Title Agency, Ltd., which at the time of the misconduct was underwritten by Chicago Title Insurance Company. Streeter handled Statewide's title work, real estate files, and closings, while the law-firm partners controlled the company's spending and major business decisions. When the law firm dissolved in 2005, one of the partners took full ownership of Statewide. Streeter continued his employment with Statewide and later became a partner in the business. After he assumed full

ownership of the business in 2007, he discovered that it had exceptionally high overhead and a lot of debt; he began to feel overwhelmed when he realized that he could not make payroll.

{¶ 6} The parties stipulated that from February 2010 to May 2011, Streeter conducted real estate closings for properties sold in Ohio and received funds from third parties that he was required to hold in escrow and disburse in accordance with the closing instructions for each transaction. *See* R.C. 3953.231. On six occasions, however, he misappropriated those funds. Instead of depositing them into the trust account that he held for that purpose, he deposited them into his operating account and used them to cover his personal and business expenses. With each successive misappropriation, he would repay part or all of the previous misappropriation to prevent detection. The details of each transaction are set forth below:

| Checks Intended for Escrow But Deposited Into Operating Account | | | | |
|---|---|---|---|---|
| Date Received | Payment | Amount | Date Repaid | Source of Funds for Repayment |
| 2/11/10 | Check | $6,911.78 | 7/19/10 | $40,589.43 |
| 7/15/10 | Check | $40,589.43 | 8/27/10 | $53,814.52 |
| 8/24/10 | Check | $53,814.52 | 9/10/10 | $53,805.28 |
| 9/10/10 | Check | $53,805.28 | 1/21/11 | $26,000.00 and $48,992.75 |
| 12/30/10 | Check | $26,000.00 | 6/9/11 | Personal |
| 1/21/11 | Check | $48,992.75 | 6/9/11 8/3/11 9/2/11 | Personal Personal Personal |

{¶ 7} In early May 2011, Chicago Title discovered that Statewide's monthly account reconciliations were delinquent and gave Streeter a deadline of May 13, 2011, to provide the documents. A Chicago Title representative analyzed the records that Streeter provided and discovered that a December 30,

2010 check for $26,000 and a January 21, 2011 check for $48,992.75 had not been deposited into Statewide's escrow account. When questioned by a Chicago Title representative, Streeter admitted that he had deposited the two checks into his operating account and spent the funds. But by February 25, 2011, his operating account was once again overdrawn.

{¶ 8} Chicago Title terminated Statewide's agency relationship on May 16, 2011, after further investigation revealed that Streeter had misappropriated the four additional checks identified in the table above. At that time, $74,992.75 of the funds Streeter had misappropriated remained unreimbursed. Streeter repaid that amount with personal and borrowed funds, making payments of $13,000 and $26,000 on June 9, 2011, $32,000 on August 3, 2011, and $3,992.75 on September 2, 2011.

{¶ 9} Chicago Title reported the misappropriation to relator and local law-enforcement authorities, but no criminal charges resulted. The parties stipulated and the panel and board found that Streeter's conduct involved dishonesty, fraud, deceit, or misrepresentation, that it adversely reflected on his fitness to practice law, and that it therefore violated Prof.Cond.R. 8.4(c) and 8.4(h) as charged in relator's complaint. We adopt these findings of fact and misconduct.

### Recommended Sanction

{¶ 10} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. We also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 11}** The parties stipulated and the board found that just one aggravating factor is present—that Streeter acted with a selfish motive by taking funds that should have been placed in escrow and using them to operate his business and avoid laying off his employees. *See* BCGD Proc.Reg. 10(B)(1)(b).

**{¶ 12}** Stipulated mitigating factors adopted by the board include (1) the absence of prior disciplinary offenses, (2) Streeter's payment of full restitution, (3) his cooperation throughout the disciplinary process, and (4) his positive reputation in the legal and general communities, as demonstrated by more than 80 character letters submitted by Streeter's friends, family, former clients, and colleagues. *See* BCGD Proc.Reg. 10(B)(2)(a), (c), (d), and (e).

**{¶ 13}** The parties also submitted a report from Dr. Galit Askenazi, a board-certified forensic psychologist, who diagnosed Streeter with major depressive disorder and general anxiety disorder dating back to at least 2005. Dr. Askenazi states with reasonable psychological certainty that these conditions contributed to the misconduct at issue in this case. He reports that although Streeter has ongoing symptoms of depression and anxiety, he participates in individual and group counseling and is committed to improving his mental health and overall quality of life. Paul Caimi, associate director of the Ohio Lawyers Assistance Program ("OLAP"), also reports that Streeter signed a three-year OLAP contract on September 22, 2011. Pursuant to that contract, he states, Streeter has actively participated in private and group counseling with OLAP and Emotions Anonymous and has shown marked improvement in his mental health. Both Dr. Askenazi and Caimi conclude that Streeter is capable of returning to the competent and ethical practice of law. Therefore, the board determined that Streeter's stipulated mental disability also qualified as a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g).

**{¶ 14}** At the hearing, Streeter argued that a two-year suspension, all stayed on conditions, is the appropriate sanction for his misconduct in light of this

court's decision in *Disciplinary Counsel v. Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857. In contrast, relator argued that while the same mitigating factors are present in this case and *Edwards*, the cases differ in that Edwards misappropriated approximately $70,000 from his client trust account, while Streeter misappropriated more than $230,000. Therefore, relator urged the board to recommend a two-year suspension, with 18 months stayed on conditions.

{¶ 15} Finding that the difference in the amount of money misappropriated by Edwards and Streeter was not material, the board stated that it was constrained from making any recommendation that conflicted with the *Edwards* rationale. Therefore, it recommended that Streeter be suspended from the practice of law for two years, all stayed on the conditions that he continue with his OLAP contract, extend the present term of that contract if recommended by OLAP, continue his individual therapy with a treating healthcare professional, and commit no further misconduct.

**Relator's Objection to the Recommended Sanction**

{¶ 16} Relator objects to the board's recommended sanction. He argues that the fully stayed suspension we imposed in *Edwards* is an exception to the general rule that attorney misconduct involving the misappropriation of funds warrants, at a minimum, an actual suspension from the practice of law. Relator distinguishes Streeter's misconduct from that of Edwards based on the sum of money misappropriated, his selfish motive, his initial mischaracterization of his misappropriation as accidental when confronted by Chicago Title, and Streeter's conscious decision not to report his misconduct and contends that an actual suspension is therefore necessary in this case.

{¶ 17} Streeter, on the other hand, contends that *Edwards* marks a new and enlightened departure from our earlier precedent that replaces the presumption of an actual suspension for misconduct involving misappropriation with a fully stayed suspension for attorneys whose contributing mental disabilities

have been treated and controlled. Our holding in *Edwards* is not so much a grand departure from our precedent, however, as it is an application of our past holdings to the specific facts of that case.

{¶ 18} Edwards, an attorney who had practiced law for more than 30 years without incident, wrote ten checks—totaling $69,500—to himself from his client trust account during a 17-month period in 2009 and 2010. *Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, ¶ 7. The last of those checks resulted in an $832.34 overdraft of his client trust account. *Id.* In response to relator's letter of inquiry regarding the overdraft, Edwards admitted not only his responsibility for the overdraft but also disclosed his pattern of misappropriating client funds. *Id.*

{¶ 19} Edwards stipulated that his conduct violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property) and that he consequently engaged in conduct adversely reflecting on his fitness to practice law, in violation of Prof.Cond.R. 8.4(h). *Edwards* at ¶ 8. We also found that his unauthorized removal of funds from his client trust account and use of those funds for his own purposes necessarily involved dishonesty in violation of Prof.Cond.R. 8.4(c). *Id.*

{¶ 20} We have consistently recognized that because each disciplinary case presents unique facts and circumstances, we are not limited to the factors enumerated in the rules, but may consider "all relevant factors" in determining the appropriate sanction for an attorney's misconduct. BCGD Proc.Reg. 10(A) and (B). *See also Disciplinary Counsel v. Oberholtzer*, 136 Ohio St.3d 314, 2013-Ohio-3706, 995 N.E.2d 217, ¶ 29; *Disciplinary Counsel v. Doellman*, 127 Ohio St.3d 411, 2010-Ohio-5990, 940 N.E.2d 928, ¶ 45; *Cleveland Metro. Bar Assn. v. Podor*, 121 Ohio St.3d 131, 2009-Ohio-358, 902 N.E.2d 488, ¶ 11; *Akron Bar Assn. v. Markovich*, 117 Ohio St.3d 313, 2008-Ohio-862, 883 N.E.2d 1046, ¶ 19.

**{¶ 21}** Although we begin with the idea that each case is different, we recognize that there are presumptive sanctions for some common forms of attorney misconduct. *See, e.g., Disciplinary Counsel v. Mathewson*, 113 Ohio St.3d 365, 2007-Ohio-2076, 865 N.E.2d 891, ¶ 19 ("an attorney's neglect of legal matters and failure to cooperate in the ensuing disciplinary investigation warrant an indefinite suspension"); *Trumbull Cty. Bar Assn. v. Kafantaris*, 121 Ohio St.3d 387, 2009-Ohio-1389, 904 N.E.2d 875, ¶ 14 (disbarment is the presumptive sanction for the misappropriation of client funds); *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237 (1995) ("When an attorney engages in a course of conduct that violates DR 1-102(A)(4) [prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation], the attorney will be actually suspended from the practice of law for an appropriate period of time").

**{¶ 22}** The presumption in favor of a specific sanction may be overcome, however, if "an abundance of mitigating evidence" warrants a different result. *See, e.g., Disciplinary Counsel v. Markijohn*, 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24, ¶ 5, 8 (acknowledging that misconduct involving dishonesty, fraud, deceit, or misrepresentation usually requires an actual suspension from the practice of law for an appropriate period of time, but imposing a six-month fully stayed suspension based on substantial mitigating evidence).

**{¶ 23}** Our decision in *Edwards* acknowledges that the presumptive sanction for misappropriation is disbarment, but it also recognizes that that presumption "may be tempered with sufficient evidence of mitigating or extenuating circumstances." *Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, at ¶ 18, citing *Disciplinary Counsel v. Bubna*, 116 Ohio St.3d 294, 2007-Ohio-6436, 878 N.E.2d 632, ¶ 28 (finding that disbarment was unwarranted for attorney's misappropriation in view of the applicable mitigating factors); *Dayton Bar Assn. v. Gerren*, 103 Ohio St.3d 21, 2004-Ohio-4110, 812 N.E.2d

1280, ¶ 11, 16 (imposing a six-month actual suspension for misappropriation of client funds in recognition of the fact that the misconduct represented an isolated incident in an otherwise unblemished career). Thus, *Edwards* embodies the application of our precedent to the facts of the case—not a departure from that precedent.

**{¶ 24}** Just one aggravating factor was present in *Edwards*—a pattern of misconduct over a period of one and a half years. But significant mitigating factors persuaded us that a two-year suspension, all stayed on conditions, would adequately protect the public from future harm. *Edwards* at ¶ 19-20. Edwards had practiced law for more than 30 years without a disciplinary violation. *Id.* at ¶ 10; BCGD Proc.Reg. 10(B)(2)(a). He fully cooperated in relator's investigation, disclosing the full extent of his misappropriation in response to relator's letter of inquiry regarding an $832.34 overdraft of his client trust account, and acknowledged the wrongful nature of his conduct. *Edwards* at ¶ 7, 10; BCGD Proc.Reg. 10(B)(2)(d). In December 2009—approximately ten months before the bank reported the overdraft of his trust account to relator— Edwards had used his own money to begin repaying the funds that he had misappropriated. *Edwards* at ¶ 7, 11.

**{¶ 25}** Edwards also presented evidence that in part because of difficulties in his marriage, he suffered from adjustment disorder with mixed anxiety and depressed mood that contributed to his misconduct. *Edwards* at ¶ 13-14. He gave most of the funds he had misappropriated to his estranged wife in a misguided attempt to win her back and reunite his family. *Id.* at ¶ 12, 14. But with the assistance of OLAP and individual counseling, he came to understand how his mental issues had affected his judgment. *Id.* at ¶ 15. He made positive life changes and demonstrated that he was capable of returning to the competent, ethical, and professional practice of law. *Id.*

**{¶ 26}** We acknowledge that there are many similarities between the facts in *Edwards* and the facts at issue in this case. We find, however, that the subtle yet important differences in Streeter's conduct warrant an actual suspension from the practice of law.

**{¶ 27}** Like Edwards, Streeter misappropriated funds that he should have held in a trust account. But in contrast to Edwards, Streeter took affirmative action to cover up his theft by repaying the money with more misappropriated money rather than with his own funds. When first confronted with evidence of his misconduct, he claimed that it was accidental rather than admit any wrongdoing—let alone the full extent of his wrongdoing. And while he now freely admits that he misappropriated funds from his trust account, he continues to minimize the extent of his theft by arguing that his Ponzi-like scheme to repay the funds resulted in a net misappropriation of just $75,001.99. All told, however, his misappropriations totaled more than $230,000—more than three times the amount that Edwards misappropriated.

**{¶ 28}** Streeter also emphasizes that he has submitted more than 80 letters from family, friends, clients, and colleagues attesting to his character, reputation, integrity, and professionalism, in contrast to the eight letters submitted by Edwards. While these letters speak to his integrity, professionalism, and concern for his fellow human beings, some of them expressly deny knowledge of the specifics of this action, while others refer to his intentional misconduct as a "mistake," a "discrepancy," an "unintentional error," or the "commingling" of escrow and operating funds, and others make no reference to the charges against him. Thus, we are left to question whether the writers fully understood the nature of Streeter's *admitted* misconduct or, in some cases, the purpose for which their letters were solicited.

**{¶ 29}** Perhaps the most important distinction between the conduct of Edwards and Streeter is the circumstances under which their misappropriations

arose. Edwards was providing increasing financial support to his aging parents and had advanced over $200,000 of his own funds to cover expenses in some of his environmental cases. *Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, at ¶ 14. He became distraught when his wife left him and became obsessed with winning her back. *Edwards* at ¶ 14. He began loaning her money from his client trust account to support her business, convincing himself that this financial support would encourage her to return to their marriage. *Edwards* at ¶ 12, 14. These factors suggest that Edwards's misconduct resulted from the convergence of several stressful life events, at least some of which were out of his control.

{¶ 30} Streeter's misconduct, in contrast, is the result of a crisis that he could have avoided, or at the very least minimized, with the exercise of due diligence. He testified that when he and his business partner decided to amicably dissolve their relationship, he assumed full ownership of Statewide Title, its assets, and its liabilities, without making any inquiry into the financial condition of the business. He admitted that he did not understand the accounting side of the business, that he did not know what balance sheets or profit and loss statements were, and that he had no idea how to run a business. Streeter viewed sole ownership of Statewide as an opportunity to advance his career and proceeded blindly, without conducting any of the due diligence that one would expect of someone—especially an attorney—entering into a significant business transaction.

{¶ 31} After Streeter assumed sole ownership of Statewide, he realized that the business was mired in debt for which he was personally responsible and burdened by high overhead expenses and salaries. With the decline of the real estate market, he soon recognized that the business was no longer financially viable. But rather than lay off employees or shut down, he began

misappropriating funds from the real estate transactions conducted by Statewide and using the money to keep the business afloat.

{¶ 32} Given Streeter's failure to investigate the business before he assumed full ownership of Statewide, his decision to misappropriate funds from his business clients in an effort to rectify his own ill-advised business decisions, his affirmative acts to cover up his theft, his failure to promptly disclose the full extent of his wrongdoing, and his ongoing efforts to minimize the extent of his theft, we find that the facts of this case are substantially different from those of *Edwards*. Therefore we sustain relator's objection to the board's recommended sanction and agree that a two-year suspension, with 18 months stayed on the conditions recommended by the board, is the appropriate sanction for Streeter's misconduct.

{¶ 33} Accordingly, David Allen Streeter Jr. is suspended from the practice of law in Ohio for two years, with the final 18 months of that suspension stayed on the conditions that he will extend the term of his OLAP contract if OLAP so recommends, comply with all of the treatment recommendations made by OLAP and his treating professionals, and commit no further misconduct. Costs are taxed to Streeter.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

LANZINGER, J., concurs in judgment only.

_____

Scott Drexel, Disciplinary Counsel, and Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, for relator.

Koblentz & Penvose, L.L.C., Richard S. Koblentz, Bryan L. Penvose, and Kevin R. Marchaza, for respondent.

_____