CINCINNATI BAR ASSOCIATION *v.* ROTHERMEL.

[Cite as *Cincinnati Bar Assn. v. Rothermel,*
104 Ohio St.3d 413, 2004-Ohio-6559.]

(No. 2004–1010—Submitted October 12, 2004—Decided December 15, 2004.)

**Per Curiam.**

{¶ 1} Respondent, Christian Dean Rothermel of Hamilton, Ohio, Attorney Registration No. 0043140, was admitted to the practice of law in Ohio in 1977. On December 31, 1984, we suspended respondent from practice for one year for professional misconduct involving conversion of client trust funds, failure to disburse funds held on a client's behalf, and failure to maintain the identity of client funds in a trust account. *Disciplinary Counsel v. Rothermel* (1984), 15 Ohio St.3d 121, 15 OBR 272, 472 N.E.2d 1072. Respondent did not immediately apply for readmission to the bar at the end of his one-year suspension but was eventually reinstated. *Disciplinary Counsel v. Rothermel* (1999), 86 Ohio St.3d 1215, 716 N.E.2d 712.

{¶ 2} On October 6, 2003, relator, Cincinnati Bar Association, charged that respondent had again violated the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and, based on the parties' comprehensive stipulations and other evidence, made findings of misconduct and a recommendation, all of which the board adopted.

Misconduct

{¶ 3} As stipulated, the board found that around March 1, 2001, respondent represented an estranged wife in the administration of her deceased husband's estate. The husband, who had died intestate, left an estate containing a $518.57 paycheck and debts of approximately $23,000, rendering the estate insolvent. On April 30, 2001, respondent deposited the $518.57 check into his client trust account.

{¶ 4} Respondent's client was the sole beneficiary of her husband's life-insurance policy, which had a death benefit of $31,707.10. On July 30, 2001, the

client and respondent agreed in writing that respondent would reimburse relatives who had advanced money for her husband's funeral and burial expenses, pay decedent's outstanding medical bills, and distribute the remaining insurance proceeds based on a formula that distributed one-half of the net proceeds to the client and one-half to her husband's children.

{¶ 5} The client endorsed the life-insurance check, and on July 31, 2001, respondent deposited the check into his client trust account. Between August 1, 2001, and August 13, 2001, respondent made eight disbursements totaling $15,941.74 from the trust account, purportedly on behalf of the decedent's estate, leaving a balance of $16,283.93. From the date of the last check until February 10, 2003, respondent failed to maintain sufficient funds in his trust account to safeguard the remaining $16,283.93. And between August 2001 and June 2002, respondent wrote 15 checks to himself against the trust account. These checks, totaling $12,980, were used for purposes unrelated to the decedent's estate. Respondent also failed to disburse additional insurance proceeds until February 2003, when sufficient funds were finally available in his client trust account.

{¶ 6} Throughout the times relevant to the complaint, respondent failed to maintain complete records of funds in his client trust account and was unable to render appropriate accounts. As an example, respondent deposited $30,800 into the account in February 2003, $27,300 of which came from unidentified sources. On February 17, 2003, respondent distributed from his trust account $12,514.45 to his client and others; however, as of the hearing date, respondent had not paid at least $3,000 in accordance with his and his client's July 30, 2001 agreement.

{¶ 7} In addition to the stipulated facts, the board found that respondent did not advise his client or even research the question of whether she was legally obligated to pay her estranged husband's debts from the life-insurance proceeds. Respondent instead deferred to the client's decision to deposit the insurance proceeds in his trust account, to reimburse relatives for the funeral and burial expenses they had paid, and to distribute one-half of any remaining insurance proceeds to his client and one-half to the decedent's surviving children. Respondent claims that it was also his client's idea to negotiate with medical providers for a reduction of the decedent's medical expenses and then to divide the savings by thirds—one-third to herself, one-third to the decedent's children, and one-third to respondent for legal fees.

{¶ 8} As for his withdrawal of $12,980 from the client trust account, respondent explained that he "borrowed" the money, making a series of 15 withdrawals over ten months and using the money to pay his personal office and living expenses. The board found that respondent did not have his client's consent to this arrangement and allowed the client to believe that leaving her money in his trust account to earn "approximately 5 percent" interest was a good investment.

Respondent did not document his loan, specify terms for repayment or interest, or give the client security against loss. He also did not advise her of their conflicting interests or suggest that she should seek other counsel to protect her interests.

{¶ 9} The client's mother-in-law filed the original grievance against respondent, from which the board concluded that at least one of the decedent's relatives was confused as to whom respondent represented. Respondent testified that he represented only the widow, although he discussed the work he was doing on the widow's behalf with others. This arrangement raised for the board the issue of a conflict of interest, in addition to his financial self-dealing, but neither conflict had been charged against respondent.

{¶ 10} Quoting the panel's report, the board concluded:

{¶ 11} "Respondent, in effect and in fact, charged his client a fee based on a percentage of supposed savings for convincing creditors with doubtful claims against his client to accept from his client payment less than the decedent owed them. In the meantime while negotiations were supposedly ongoing over a nearly two year period, Respondent systematically drained his client's funds from his trust account using those funds for his own purposes only.

{¶ 12} "Respondent eventually restored the funds largely with deposits of unknown origin. Respondent claims that he has been unable to find his client and therefore has not delivered her money to her although he has drawn trust account checks payable to her. There is no independent evidence in the record demonstrating funds on deposit to honor the checks drawn on that account. No report of unclaimed funds has been made."

{¶ 13} Respondent admitted and the board found that respondent had violated DR 9–102(A) (requiring an attorney to deposit client's funds in a separate identifiable bank account) and 9–102(B)(3) (requiring an attorney to maintain complete records of client's property and to render appropriate accounts) by failing to maintain client funds in a client trust account until properly disbursed. Respondent also admitted and the board found that he had violated DR 1–102(A)(4) (barring conduct involving fraud, deceit, dishonesty, or misrepresentation) by removing funds belonging to a client from a client trust account and using those funds for his own purpose.

### Sanction

{¶ 14} In recommending a sanction for this misconduct, the board considered the mitigating and aggravating factors of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As a mitigating factor, the board found, consistent with the parties'

stipulations, that respondent had cooperated in the disciplinary process. BCGD Proc.Reg. 10(B)(2)(d). Respondent also reported that he had restored missing funds to his client trust account and intended to repay his client with interest, presenting checks for this purpose at the panel hearing. The board additionally accepted four letters from clients and associates who praised respondent's skills as a practitioner.

{¶ 15} To the board, however, the aggravating factors far outweighed mitigating factors. In aggravation, the board found that respondent had a prior record of discipline that, although occurring 20 years ago, involved the same misconduct as he had committed in this case. The board further found a dishonest and selfish motive inasmuch as respondent converted his client's money to pay his personal bills. BCGD Proc.Reg. 10(B)(1)(a) and (b).

{¶ 16} Respondent did acknowledge that his actions were wrong; however, the board found that he had also attempted to excuse or justify them by suggesting that his repeated and unauthorized use of his client's funds served her wish to earn interest pending the estate administration. Respondent also claimed that he "cured" his misconduct by paying his client with interest, saving her money by negotiating a reduction in the medical bills, and ultimately not charging for legal fees. Respondent also defended his delay in paying his client, claiming that he did not know where she lived.

{¶ 17} The board found that respondent's explanations were unconvincing and indicated a lack of remorse, and it was skeptical of respondent's commitment to make restitution. BCGD Proc.Reg. 10(B)(1)(i). Although respondent denied that he knew of the grievance against him when he began making the disbursements from his trust account, the board found that the grievance filing date coincided suspiciously with creditors' acceptance of the proposed reductions and deposits in respondent's client trust account.

{¶ 18} Relator recommended that respondent be indefinitely suspended from the practice of law. Arguing that his admitted dishonesty and violation of DR 1–102(A)(4) was a one-time occurrence and not particularly egregious because he was carrying out his client's wishes and was in the process of repaying "borrowed" funds, respondent suggested a two-year suspension with one year stayed. The board, citing the rule that absent significant mitigation evidence, disbarment is the sanction for an attorney's misappropriation of a client's funds, *Cleveland Bar Assn. v. Dixon*, 95 Ohio St.3d 490, 2002–Ohio–2490, 769 N.E.2d 816, ¶ 15, recommended that respondent be permanently disbarred. Respondent objects to this recommendation.

{¶ 19} Upon review, we agree that respondent violated DR 9–102(A), 9–102(B)(3), and 1–102(A)(4) as found by the board. We reject the board's recommended sanction, however, and find an indefinite suspension appropriate.

{¶ 20} In determining the appropriate sanction for an attorney's misconduct, we consider " 'the duties violated, the actual injury caused, the lawyer's mental state, the existence of aggravating and mitigating circumstances, and sanctions imposed in similar cases.' " *Disciplinary Counsel v. Connors,* 97 Ohio St.3d 479, 2002–Ohio–6722, 780 N.E.2d 567, ¶ 16, quoting *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002–Ohio–4743, 775 N.E.2d 818, ¶ 16. Here, respondent violated his duties to clients and to the public. DR 9–102(A), 9–102(B)(3), and 1–102(A)(4). He alleges no mental illness or substance abuse and, as the board found, there are few extenuating circumstances of record.

{¶ 21} Respondent has, however, admitted his misconduct with respect to this one client, and we do not share the board's suspicions about his attempts to make restitution. Respondent has offered to pay for wrongdoing about which his client has not complained, an offer that lends some credence to his claim that the client wanted to philanthropically pay her husband's bills and share the insurance proceeds with his children, even though this plan was not in her financial interests. Moreover, from respondent's forthright and conciliatory oral argument before this court, we believe that he may in the future regain the moral compass necessary to competently and ethically practice law, evidence that distinguishes this case from any in which we have ordered disbarment.

{¶ 22} Accordingly, respondent is hereby indefinitely suspended from the practice of law. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

———————

Edwin W. Patterson III, Bar Counsel; Rice & Diedrichs, L.L.P., and James K. Rice; Heekin & Heekin and Christopher R. Heekin, for relator.

Christian Dean Rothermel, pro se.