**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Joltin,* **Slip Opinion No. 2016-Ohio-8168.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8168

DISCIPLINARY COUNSEL *v.* JOLTIN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Joltin,* Slip Opinion No. 2016-Ohio-8168.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including misappropriation of client funds, failing to keep a client reasonably informed about the status of a legal matter, failing to promptly deliver funds that a client is entitled to receive, failing to cooperate in a disciplinary investigation, and failing to properly maintain and use a client trust account—Two-year suspension with one year stayed on conditions.*

(No. 2016-0261—Submitted August 16, 2016—Decided December 19, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2015-022.

_____

**Per Curiam.**

{¶ 1} Respondent, Benjamin Joltin of Canfield, Ohio, Attorney Registration No. 0072993, was admitted to the practice of law in Ohio in November 2000. In a complaint certified to the Board of Professional Conduct on April 13, 2016, relator, disciplinary counsel, charged Joltin with multiple violations of the Rules of Professional Conduct arising largely from the financial mismanagement of his practice. Among other things, the complaint alleged that he commingled personal and client funds, misappropriated client funds, failed to promptly deliver funds that clients or third persons were entitled to receive, misled a client about the reason he was unable to promptly deliver her funds, and failed to maintain any records regarding his client trust account for several years. The parties submitted stipulated findings of fact and misconduct, aggravating and mitigating factors, and 77 stipulated exhibits. They also agreed to dismiss two alleged rule violations.

{¶ 2} After hearing Joltin's testimony and reviewing the stipulated evidence, a panel of the Board of Professional Conduct issued a report largely adopting the parties' stipulations of fact and misconduct and recommending the dismissal of an additional alleged violation. Although relator argued that Joltin's misconduct warranted an indefinite suspension from the practice of law, and Joltin argued in favor of a fully stayed suspension, the panel recommended that Joltin be suspended from the practice of law for two years, with the final 18 months stayed on conditions. The board adopted the panel's report in its entirety. Relator objects to the board's recommended sanction and urges us to impose a two-year suspension with no stay.

{¶ 3} For the reasons that follow, we sustain relator's objection in part, overrule it in part, and suspend Joltin from the practice of law for two years with the second year stayed on conditions.

2

**Misconduct**

*Count One: The Torok Matter*

{¶ 4} In September 2012, Lisa Torok hired Joltin to represent her in a complex divorce case. Joltin stipulated that he agreed to accept a flat fee of $2,500, which was later increased to $3,000. But Torok gave him a check for $18,000 to hold in his trust account to cover her legal fees, with the balance to be distributed to her at her direction.[1] At the time Joltin deposited Torok's check, his client-trust-account balance was $28.70. Six days later, he issued a $4,000 check to himself with the notation "Torok" on the subject line, but he had not earned that amount as either a fee or a reimbursement of expenses.

{¶ 5} In November 2012, Joltin deposited $88,000 in personal funds into his client trust account, thereby commingling personal and client funds. Although he initially testified that the deposited funds were an inheritance, he later conceded that they represented an executor's fee he had earned from his grandparents' estate. At Torok's request in January 2013, Joltin issued her a check for $15,000, but when she attempted to cash the check in September, the bank returned it for insufficient funds. After the client informed Joltin that the check had been dishonored, he sent her an e-mail message stating that the domestic relations court had placed a restraining order on the distribution of the funds, but it was Joltin's use of Torok's money for his personal purposes—not the restraining order—that caused the bank to dishonor the check.

{¶ 6} Joltin later issued two checks to Torok—one for $1,800 in September 2013 and another for $5,000 in December 2013—and should have held another $11,200 of her money in trust. But as of January 1, 2014, his client trust account balance was just $421.78.

---

[1] The purpose of the excess funds is not established in the record, and relator has not alleged that either Joltin or Torok intended to conceal assets from Torok's spouse in the divorce proceeding.

**{¶ 7}** Torok terminated Joltin's representation on February 25, 2014, and a fee dispute ensued. Torok claimed that they had agreed to a fixed fee of $2,500, and Joltin claimed that the $18,000 deposit was a retainer toward his hourly fees, which were in excess of $4,000. Joltin ultimately agreed to accept $3,000 plus $300 for filing fees and expenses. After Joltin gave Torok a $4,900 cashier's check in April 2014, he still owed her $3,000, but he did not respond to her numerous attempts to obtain the remaining funds. He did not refund the final $3,000 to Torok until December 7, 2015—just 9 days before his disciplinary hearing.

**{¶ 8}** Relator sent his first letter of inquiry to Joltin on March 27, 2014, but Joltin did not timely respond. He responded to a second letter of inquiry, and his attorney responded in part to another letter promising to provide additional information. When the additional information was not sent, a deposition was scheduled. But after requesting and receiving several continuances and being subpoenaed for a November 2014 deposition, Joltin failed to appear at the appointed time. The board did not find Joltin's testimony that an attorney friend had told him that the deposition had been postponed to be credible, because he offered no evidence to corroborate it and the scheduling letter plainly stated that the deposition would not be rescheduled for any reason.

**{¶ 9}** The parties stipulated and the board found that Joltin's conduct violated Prof.Cond.R. 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred), 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.1(b) and Gov.Bar R. V(9)(G) (both requiring an attorney to cooperate with a disciplinary investigation). Because relator failed to present any evidence addressing the factors to be considered in

4

determining whether Joltin's fee was reasonable, however, the board recommended that we dismiss an alleged violation of Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee).

{¶ 10} We adopt the board's findings of fact and agree that Joltin's conduct violated Prof.Cond.R. 1.15(c), 1.15(d), 1.16(e), 8.1(b), and 8.4(c) and Gov.Bar R. V(9)(G), and we dismiss the alleged violation of Prof.Cond.R. 1.5(a) with respect to this count.

*Count Two: The Cayavec Matter*

{¶ 11} In 2009, Joltin represented Roger Johnson in a personal-injury matter. Before settling the case, Joltin received a notice of assignment from Johnson's treating physician, Dr. Michael Cayavec. On October 29, 2009, he sent Dr. Cayavec a letter of protection accepting the terms of the assignment. Joltin settled Johnson's case in September 2013 and distributed the settlement proceeds to his client, but he did not notify or pay Dr. Cayavec because he had misplaced and forgotten the letter of protection. Although relator sent Joltin two letters of inquiry regarding the doctor's grievance in October 2014, Joltin waited until March 12, 2015, to respond. He did not pay Dr. Cayavec the $3,400 that he was owed until December 7, 2015.

{¶ 12} The parties stipulated and the board found that Joltin violated Prof.Cond.R. 1.15(d) by failing to promptly deliver the funds to which Dr. Cayavec was entitled and that he violated Prof.Cond.R. 8.1(b) and Gov.Bar R. V(9)(G) by failing to timely cooperate in the resulting disciplinary investigation. The board also dismissed an additional alleged violation on relator's motion. We adopt the board's findings of fact and misconduct with respect to this count.

*Count Three: The Patterson Matter*

{¶ 13} In February 2014, Joltin agreed to assume representation of Mark Patterson in an eviction matter as a favor to another lawyer who was unable to

complete the representation. Patterson paid him $205—$105 of which was for filing fees. Although Joltin attempted to file the eviction action, the court twice rejected his filings for technical deficiencies. Patterson attempted to reach Joltin by telephone from mid-March through early June, but spoke only with a secretary who assured him that Joltin was working on the case. Joltin did not respond to an e-mail in which Patterson detailed the issues to be set forth in the eviction documents. In April and May 2014, Patterson sent e-mails terminating Joltin's representation and requesting a refund, but Joltin did not respond to either e-mail. Joltin's March 2015 response to relator's November and December 2014 letters of inquiry was neither complete nor timely. And he waited until the following December to refund Patterson's $205.

{¶ 14} The parties stipulated and the board found that Joltin's conduct in the Patterson matter violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.15(d), 1.16(d) (requiring a lawyer withdrawing from representation to take steps reasonably practicable to protect a client's interest), 1.16(e), and 8.1(b) and Gov.Bar R. V(9)(G). The board also dismissed an additional violation on the motion of relator. We adopt the board's findings of fact and misconduct with respect to this count.

*Count Four: Trust-Account Records*

{¶ 15} Joltin testified that he stopped maintaining client-trust-account records in 2008 and did not resume that practice until relator commenced his investigation in 2013. He admitted that he did not maintain a record of the funds he held on behalf of each client and that he did not maintain his bank statements or perform a monthly reconciliation of his client trust account. He also admitted that he had no idea what his client trust account balance was in 2012 when he should have been holding Torok's funds.

6

{¶ 16} Joltin stipulated that he repeatedly misused his client trust account and failed to safeguard client funds from December 2012 through March 2014—spending client funds before they were earned, repeatedly commingling personal and client funds, and paying his personal expenses directly from his client trust account on at least 85 occasions. Joltin's client trust account was overdrawn on multiple occasions, and he failed to respond to at least four of relator's letters of inquiry regarding those overdrafts. He also failed to appear pursuant to subpoena at two depositions to address these overdrafts—the first was set for April 14, 2014, and the second, also discussed in Count One above, was scheduled for November 5, 2014.

{¶ 17} The board found that Joltin's conduct violated Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client that sets forth the name of the client; the date, amount, and source of all funds received on behalf of the client; the date, amount, payee, and purpose of each disbursement made on behalf of the client; and the current balance for each client), 1.15(a)(3) (requiring a lawyer to maintain a record for the lawyer's client trust account, setting forth the name of the account, the date, amount, and client affected by each credit and debit, and the balance in the account), 1.15(a)(4) (requiring a lawyer to maintain all bank statements, deposit slips, and cancelled checks, if provided by the bank, for each bank account), 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account), 1.15(b) (permitting a lawyer to deposit his or her own funds in a client trust account for the sole purpose of paying or obtaining a waiver of bank service charges), 1.15(c), and 8.1(b) and Gov.Bar R. V(9)(G). We adopt the board's findings of fact and misconduct with respect to Count Four of the complaint.

## Sanction

{¶ 18} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties the lawyer violated and the sanctions

imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. We also weigh evidence of the aggravating and mitigating factors listed in Gov.Bar R. V(13).

{¶ 19} As aggravating factors, the parties stipulated and the board found that Joltin committed multiple offenses, engaged in a pattern of misconduct, and failed to cooperate in the disciplinary process until after relator filed his complaint with the board. *See* Gov.Bar R. V(13)(B)(3), (4), and (5). The board also found that he acted with a dishonest and selfish motive by distributing $4,000 of Torok's funds from his client trust account to himself within days of the initial deposit without having earned that amount. *See* Gov.Bar R. V(13)(B)(2).

{¶ 20} The parties stipulated and the board agreed that mitigating factors include the absence of a prior disciplinary record and letters from friends and colleagues attesting to Joltin's good character and reputation, as demonstrated by his professional competence, attention to detail, zealous advocacy, courteous behavior both in and out of the courtroom, and good reputation for truth and veracity. *See* Gov.Bar R. V(13)(C)(1) and (5). The board also afforded mitigating effect to Joltin's remorse, noting that he freely acknowledged the wrongfulness of his conduct and wrote formal letters of apology to the affected clients.

{¶ 21} The board accepted the parties' stipulations that Joltin made full and free disclosure of his actions to the disciplinary board and that he made a "good faith effort to make restitution," but it afforded very little weight to these factors because his actions were not timely. *See* Gov.Bar R. V(13)(C)(3) (providing that a timely, good-faith effort to make restitution or to rectify the consequences of misconduct may be considered as a mitigating factor). And although Joltin testified that he had limited the scope of his practice, had revised his general office procedures, had begun to comply with Prof.Cond.R. 1.15 requirements regarding his client trust accounts, and had voluntarily engaged a mentor just days before the hearing in this matter, the board did not give those factors any mitigating effect.

{¶ 22} The board discussed multiple events in Joltin's personal life—including three deaths in his family and the unraveling of his marriage—that negatively affected his physical and mental health at the time of the charged misconduct, his consultations with mental-health professionals, and his decision to enter into a three-year contract with the Ohio Lawyers Assistance Program on December 1, 2015. It determined, however, that the evidence was insufficient to establish that Joltin suffered from a mental disorder that was causally related to his misconduct. *See* Gov.Bar R. V(13)(C)(7). And the board was not convinced that the steps he had recently taken to address his mental-health issues would prove effective over time. Thus, the board did not consider those personal challenges to be mitigating factors, stating that there was not proof that they were a cause of his misconduct.

{¶ 23} For misconduct that included significant violations including a complete failure to maintain required client-trust-account records and misappropriation of client funds, relator recommended that Joltin be indefinitely suspended from the practice of law. Joltin argued in favor of a fully stayed suspension.

{¶ 24} After comparing the facts of this case to those in the cases propounded by the parties, however, the board found Joltin's conduct to be most comparable to *Disciplinary Counsel v. Coleman*, 144 Ohio St.3d 35, 2015-Ohio-2489, 40 N.E.3d 1092. Coleman accepted $18,000 from an incarcerated client and agreed to invest the money on the client's behalf. *Id.* at ¶ 5. But he misappropriated the money. *Id.* at ¶ 5-6. When the client directed Coleman to make several distributions, he made them from his personal funds, but the client grew suspicious because the disbursements were made with money orders and cashier's checks. *Id.* at ¶ 6-7. Coleman falsely assured the client and presented him with a fraudulent ledger in an effort to persuade him that the funds remained safely deposited in his client trust account. *Id.* at ¶ 7. The client terminated the representation and

demanded that Coleman return his money. Eventually, Coleman began to make periodic payments to the client, but it took him almost two years to repay the money that he had misappropriated. *Id.*

**{¶ 25}** We found that Coleman's conduct violated Prof.Cond.R. 1.15(a), 1.15(a)(2), 1.15(a)(3), 1.15(a)(5), and 8.4(c). As aggravating factors, we found that Coleman acted with a selfish motive by converting his client's money to his own use and that he caused harm to a vulnerable client. *Id.* at ¶ 10; *see also* Gov.Bar R. V(13)(B)(2) and (8). Mitigating factors included his full disclosure and cooperative attitude toward the disciplinary proceedings as well as his good character and reputation. *Id.* at ¶ 10; *see also* Gov.Bar R. V(13)(C)(4) and (5). We also attributed some mitigating effect to the personal hardships Coleman faced as the single parent of three children following a drastic decrease in his court-appointed caseload and income as the result of a change in appointment procedures. *Id.* at ¶ 14-15. Considering these factors and having determined that an actual suspension was warranted for Coleman's misconduct, we suspended him from the practice of law for two years with 18 months stayed on the conditions that he work with a law-practice monitor for the duration of the stayed suspension and engage in no further misconduct. *Id.* at ¶ 17.

**{¶ 26}** Given the similarities between the financial misdeeds of Coleman and Joltin—including their commingling, misappropriation, failure to maintain adequate records of client funds in their possession, and false statements to their clients—the board concluded that their conduct warranted comparable sanctions. It therefore recommended that we suspend Joltin for two years but stay the final 18 months on the conditions that he (1) serve a period of monitored probation, (2) complete three hours of continuing legal education ("CLE") addressing trust-account maintenance in addition to the CLE required by Gov.Bar R. X(13), (3) fully comply with his existing OLAP contract, and (4) commit no further misconduct.

**{¶ 27}** Relator objects to the board's recommended sanction and argues that Joltin's multiple acts of misconduct, including dishonesty and the misappropriation of client funds, warrants a harsher sanction. Comparing that conduct with the conduct at issue in *Disciplinary Counsel v. McCauley*, 114 Ohio St.3d 461, 2007-Ohio-4259, 873 N.E.2d 269, and *Disciplinary Counsel v. Crosby*, 124 Ohio St.3d 226, 2009-Ohio-6763, 921 N.E.2d 225, relator suggests that the appropriate sanction is a two-year suspension from the practice of law with no stay.

**{¶ 28}** In *McCauley,* we indefinitely suspended an attorney who commingled personal and client funds, misappropriated funds from his client trust account to pay his personal and business expenses, overdrew his client trust account, and failed to maintain complete records regarding the client funds in his possession. *Id.* at ¶ 5-6. But McCauley misappropriated approximately $200,000 from two clients who consigned their accounts receivable to him for collection and payment—whereas Joltin misappropriated $18,000. In addition, McCauley defaulted on a cognovit promissory note that he signed as part of an agreement to reimburse one of the clients from whom he misappropriated accounts receivable. He also misappropriated significant sums that he held on behalf of a third client and spent an additional $60,000 that had been deposited in his account due to a bank error. *Id.* at ¶ 10-11, 14-15. Like Joltin, McCauley ignored or failed to sufficiently respond to relator's letters of inquiry about the underlying grievances, although he eventually stipulated that he engaged in much of the charged misconduct. *Id.* at ¶ 6, 12, 20, 21.

**{¶ 29}** We acknowledged that disbarment is the presumptive sanction for the misappropriation of client funds. *Id.* at ¶ 22; *see*, *e.g.*, *Cincinnati Bar Assn. v. Rothermel*, 104 Ohio St.3d 413, 2004-Ohio-6559, 819 N.E.2d 1009. But we found that McCauley's lack of a prior disciplinary record, eventual cooperation in the disciplinary proceedings, and acknowledgment of wrongdoing and sincere remorse, combined with payment of full restitution to his clients, outweighed aggravating

factors that included multiple offenses and a pattern of misconduct. *Id.* at ¶ 23; *see also* Gov.Bar R. V(13)(C)(1), (3), and (4) and V(13)(B)(3) and (4). Therefore, we accepted the board's recommendation that McCauley be indefinitely suspended from the practice of law in Ohio and be required to complete at least 12 hours of CLE in law-office and trust-account management in addition to the general CLE requirements. *Id.* at ¶ 24.

{¶ 30} In *Crosby,* we confronted an attorney who commingled personal and client funds, used his client trust account as a personal checking account, failed to maintain complete records of all client funds coming into his possession, failed to properly train or supervise the employee he entrusted to maintain his client trust account, and retained earned fees in his client trust account in a deliberate attempt to shield the funds from judgment creditors and taxing authorities. *Crosby*, 124 Ohio St.3d 226, 2009-Ohio-6763, 921 N.E.2d 225, at ¶ 5, 8-9, 12-13.

{¶ 31} Although Crosby was not charged with misappropriating client funds, the evidence showed that he overdrew his client trust account and that on at least one occasion the account balance was nearly $8,000 less than the amount that had been entrusted to him by one of his clients. *Id.* at ¶ 9 and fn. 2. In mitigation, we found that Crosby had no prior disciplinary record and there was no evidence that he failed to make his clients whole. *Id.* at ¶ 16. Aggravating factors, however, included a pattern of misconduct, failure to fully cooperate in the disciplinary process, and Crosby's dishonest and selfish efforts to hide his personal funds from his creditors. *Id.* at ¶ 17. On those facts, we suspended Crosby for two years with no stay and conditioned his reinstatement on the completion of 12 hours of CLE in law-office management and accounting in addition to the standard CLE requirement and payment or compromise of nearly $26,000 in judgments that had been taken against him. *Id.* at ¶ 22-34.

{¶ 32} While there is no doubt that Joltin's conduct is serious and warrants a period of actual suspension from the practice of law, it is not comparable to

McCauley's misappropriation of more than $300,000 from his clients and his bank. And while Joltin's misconduct is similar to that of Crosby, we find that Crosby's conduct was more egregious in that he admitted that he commingled personal and client funds not only as a convenience but also to shield his personal assets from judgment creditors and taxing authorities. *Crosby* at ¶ 13. In contrast, relator did not allege in its complaint or earnestly attempt to prove that Joltin deposited the $88,000 he received as an executor's fee from the estate of his deceased grandparents into his client trust account with the intent to conceal his assets from his spouse.

**{¶ 33}** Of the cases advanced by the parties and the board, we find that Joltin's dishonesty and financial misconduct are most analogous to the misconduct at issue in *Coleman*. But in addition to misusing his client trust account, failing to maintain required records regarding his client trust account, and misappropriating $18,000 in client funds, Joltin also failed to honor a letter of protection issued to a client's treating physician for more than two years after distributing settlement proceeds to his client and neglected another client's matter. Moreover, he failed to respond to multiple letters of inquiry sent by relator, provided incomplete answers in others, and ignored subpoenas compelling his attendance at two separate depositions. Therefore, we agree with relator's argument that a greater period of actual suspension is warranted given Joltin's additional misconduct, the presence of serious aggravating factors including a dishonest and selfish motive, multiple offenses, a pattern of misconduct, and failure to cooperate in the disciplinary process as well as Joltin's delays in making restitution, seeking a mentor, and seeking assistance from OLAP. Contrary to relator's argument, however, we believe that a two-year suspension with the second year stayed on the conditions recommended by the board is commensurate with the severity of Joltin's misconduct and will adequately protect the public from future harm.

**{¶ 34}** Accordingly, we sustain relator's objection in part, overrule it in part, and suspend Benjamin Joltin from the practice of law in Ohio for two years with the second year stayed on the conditions that he serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21), complete three hours of CLE addressing trust-account maintenance in addition to the CLE requirements of Gov.Bar R. X(13), remain in full compliance with his existing OLAP contract, follow all treatment recommendations of OLAP and his treating professionals, and commit no further misconduct. Costs are taxed to Joltin.

Judgment accordingly.

PFEIFER, O'DONNELL, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

LANZINGER, J., dissents, with an opinion joined by O'CONNOR, C.J.

_____

**LANZINGER, J., dissenting.**

**{¶ 35}** I respectfully dissent and would impose an indefinite suspension in this case. A two-year suspension with one-year stayed is insufficient when the presumptive sanction is disbarment for misappropriation of client funds. *See Cincinnati Bar Assn. v. Rothermel*, 104 Ohio St.3d 413, 2004-Ohio-6559, 819 N.E.2d 1099, ¶ 18.

O'CONNOR, C.J., concurs in the foregoing opinion.

_____

Scott J. Drexel, Disciplinary Counsel, and Catherine M. Russo, Assistant Disciplinary Counsel, for relator.

Tracey A. Laslo, for respondent.

_____