[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Smith*, Slip Opinion No. 2024-Ohio-4502.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-4502

CLEVELAND METROPOLITAN BAR ASSOCIATION *v*. SMITH.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Smith*, Slip Opinion No. 2024-Ohio-4502.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct involving misappropriation of client funds, failure to maintain required client-trust-account records, failure to reduce contingent-fee agreement to writing, and failure to inform client of lack of professional-liability insurance—Two-year suspension with 18 months conditionally stayed.*

(No. 2023-0708—Submitted July 9, 2024—Decided September 17, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-007.

_____

The per curiam opinion below was joined by FISCHER, DEWINE, DONNELLY, STEWART, and DETERS, JJ. KENNEDY, C.J., concurred in part and

dissented in part and would impose an indefinite suspension. BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, Robert Smith III, of Beachwood, Ohio, Attorney Registration No. 0025381, was admitted to the practice of law in Ohio in 1984. On April 7, 1993, we suspended Smith's license to practice law on an interim basis following his conviction of theft of government property in violation of 18 U.S.C. 641. *In re Smith*, 1993-Ohio-247. On June 22, 1994, we suspended Smith from the practice of law for two years with credit for the time he had served under the interim suspension for ethical violations arising from his criminal offense. *Disciplinary Counsel v. Smith*, 1994-Ohio-44. We reinstated him to the practice of law on November 21, 1995. *Disciplinary Counsel v. Smith*, 1995-Ohio-397.

{¶ 2} In April 2023, relator, Cleveland Metropolitan Bar Association, alleged in a three-count complaint that Smith had misappropriated settlement funds owed to one of his clients and to a medical center that treated several other clients. Relator further alleged that Smith had failed to maintain required client-trust-account records, failed to reduce a contingent-fee agreement to writing, and failed to inform a client that he did not carry professional-liability insurance. Although Smith waived a probable-cause determination, he failed to timely answer the complaint, and the director of the Board of Professional Conduct certified Smith's default to this court. Smith timely responded to our order to show cause why an interim default suspension should not be imposed, and we remanded the case to the board for further proceedings.

{¶ 3} On remand, Smith admitted each of the allegations in the complaint and the parties submitted a consent-to-discipline agreement, recommending that Smith be suspended for two years with 18 months conditionally stayed, but that agreement was rejected by the three-member panel of the board that was appointed

to hear the case. The parties then entered into stipulations of fact, misconduct, and aggravating and mitigating factors, which were nearly identical to the stipulations in the parties' rejected consent-to-discipline agreement. Smith testified at a hearing before the panel. And in the parties' closing briefs, they each recommended that Smith be suspended for two years with 18 months stayed on conditions that would require him to obtain additional CLE and serve a period of monitored probation—though they differed on the extent of those requirements.

**{¶ 4}** The panel issued a report, finding that Smith had committed the charged misconduct. Based on the relevant aggravating and mitigating factors and our precedent, the board recommended that Smith be suspended from the practice of law for two years with no stay and with conditions on his reinstatement, followed by a one-year period of monitored probation. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

**{¶ 5}** Smith objects to the board's recommended sanction, arguing primarily that the board accorded too much weight to his prior suspension and too little weight to his mitigating evidence. Smith and relator once again argue, independently, that the appropriate sanction for Smith's misconduct is a two-year suspension with 18 months conditionally stayed. The parties jointly waived oral argument. For the reasons that follow, we adopt the board's findings of misconduct, sustain Smith's objections in part, and suspend Smith from the practice of law for two years with 18 months stayed on the slightly more rigorous conditions recommended by relator, and we require Smith to serve an 18-month period of monitored probation upon his reinstatement to the profession.

## I. MISCONDUCT

### A. Count I—Misappropriation of Funds and Mismanagement of Client Trust Account

**{¶ 6}** In the first count of its complaint, relator alleged that Smith had misappropriated funds belonging to one client, Wilma Javey, and other funds that

the Chagrin Medical Center was entitled to receive for treatment provided to several of Smith's other clients.

### 1. The Javey Matter

{¶ 7} Around 2014, Javey hired Smith to pursue a personal-injury claim against a public transit authority after she fell on one of the transit authority's buses. Smith filed a complaint on Javey's behalf in the Hamilton County Court of Common Pleas in March 2016.

{¶ 8} Javey agreed to settle her claim for $12,000 in January 2019. Smith deposited the settlement check into his client trust account on February 4, 2019. A week later, Smith sent Javey a settlement statement showing deductions of $3,996 for his legal fees and an additional $840 in expenses. Javey informed Smith that she thought his fees were excessive and requested an itemized list of the services that he had provided to her. According to Smith, Javey disputed just $1,000 of his fee.

{¶ 9} Although Smith eventually provided an itemized statement to Javey, he did not give her any portion of the settlement proceeds until April 30, 2021— more than two years after he received the settlement check. At that time, Smith waived his fee and gave her the full $12,000 settlement. He admits, however, that from the time he deposited the settlement check until he paid Javey, the balance in his client trust account dropped below the undisputed amount that he owed Javey.

{¶ 10} In January 2022, Smith was indicted on a single count of grand theft for unlawfully retaining at least $7,500 of Javey's settlement proceeds. He pleaded guilty to that offense, a fourth-degree felony under R.C. 2913.02(A)(2), in February 2022. *See State v. Smith*, Cuyahoga C.P. No. 21-CR-661001-A (Feb. 23, 2022). He was accepted into a second-chance diversion program and sentenced to one year of community control, which was successfully terminated in February 2023. Despite his participation in that program, his conviction remains. Smith admits that he spent Javey's funds on his own personal and business expenses and that his

failure to maintain an adequate balance in his client trust account to cover the amount that he owed Javey constituted misappropriation of funds and grand theft.

### 2. The Chagrin Medical Center's Liens

{¶ 11} On occasion, Smith referred personal-injury clients with soft-tissue injuries to Chagrin Medical Center and executed liens so that his clients did not have to pay for their treatment until their cases were resolved.

{¶ 12} In June 2020, Chagrin's owner filed a grievance with relator alleging that the center was owed money on outstanding liens for having treated several of Smith's clients. At that time, Chagrin had liens on the settlements of approximately ten of Smith's clients. Notably, Smith had resolved four of those clients' claims—in April 2017, November 2017, June 2018, and June 2019—and received the settlement checks shortly after negotiating each settlement. He deposited the settlement checks into his client trust account and paid each of the four clients their share of the settlement proceeds. However, Smith did not satisfy Chagrin's liens on those settlement proceeds until April 30, 2021, when he paid Chagrin a total of $10,108 for those clients' treatment.

{¶ 13} Smith admits that he failed to continuously maintain a client-trust-account balance sufficient to cover the amounts owed to Chagrin and that he spent the funds on his own personal and business expenses. He also admits that he did not maintain a client-trust-account ledger or reconcile his client trust account.

### 3. Rule Violations

{¶ 14} The parties stipulated and the board found that Smith's conduct in Count I violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold funds belonging to a client or third party in a client trust account separate from his own property), 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held), 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account), 1.15(d) (requiring a lawyer to promptly deliver funds or other property that a client or a

third party is entitled to receive), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

## B. Counts II and III—Failure to Reduce Contingent-Fee Agreement to Writing and Failure to Inform Client of Lack of Professional-Liability Insurance

{¶ 15} Although Smith claimed to represent Javey on a contingent-fee basis, he failed to obtain her written consent to that fee arrangement. In addition, Smith did not carry professional-liability insurance until September 2015 and failed to disclose his lack of insurance to Javey. The parties stipulated and the panel found that Smith's conduct violated Prof.Cond.R. 1.5(c)(1) (requiring a lawyer to set forth a contingent-fee agreement in a writing signed by both the client and the lawyer) and 1.4(c) (requiring a lawyer to inform a client if the lawyer does not maintain professional-liability insurance and obtain a signed acknowledgment of that notice from the client).

## II. RECOMMENDED SANCTION

### A. Aggravating and Mitigating Factors

{¶ 16} The parties stipulated and the board found that four aggravating factors are present in this case: Smith (1) has a prior disciplinary record, (2) acted with a dishonest or selfish motive, (3) engaged in a pattern of misconduct, and (4) committed multiple offenses. *See* Gov.Bar R. V(13)(B)(1) through (4).

{¶ 17} In mitigation, the board found that Smith had made a timely, good-faith effort to make restitution and to rectify the consequences of his misconduct and that he had made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings. *See* Gov.Bar R. V(13)(C)(3) and (4). Smith also submitted five character letters attesting to his good character, several of which highlighted his community involvement and dedication to serving underserved constituencies and persons of limited financial

means, as well as his pro bono work for his church and its members and for the NAACP. *See* Gov.Bar R. V(13)(C)(5).

{¶ 18} Furthermore, Smith established the existence of mitigating mental disorders—namely, ADHD and an unspecified anxiety and depressive disorder. *See* Gov.Bar R. V(13)(C)(7). And finally, the board credited Smith for acknowledging and accepting responsibility for his misconduct. The parties proposed that Smith be suspended from the practice of law for two years with 18 months stayed on conditions. Relator argued that Smith should be required to complete six hours of CLE focused on law-office and client-trust-account management in addition to the requirements of Gov.Bar R. X and serve an 18-month period of monitored probation, while Smith argued that just three hours of CLE and one year of monitored probation would suffice.

### B. Smith's Objections to the Recommended Sanction

{¶ 19} After considering cases in which this court imposed a range of sanctions on attorneys who misappropriated client funds, the board rejected the parties' recommendation that Smith be suspended for two years with 18 months stayed on conditions. Instead, the board recommends that we suspend Smith from the practice of law for two years with no stay. The board also recommends that as conditions of reinstatement, we require Smith to complete six hours of CLE focused on law-office and client-trust-account management in addition to the requirements of Gov.Bar R. X and submit proof from a qualified healthcare professional that he has continued to participate in mental-health counseling; the board also recommends that Smith be required to serve a one-year period of monitored probation upon his reinstatement to the profession.

{¶ 20} Smith objects to the board's recommended sanction, arguing that his misconduct was less egregious than the misconduct at issue in many of the cases considered by the board. Smith further contends that the board accorded too much aggravating effect to his prior discipline and criminal conviction and too little

weight to the mitigating factors present in this case. He asserts that when those factors are given the appropriate weight, his conduct is most comparable to the conduct that was at issue in *Disciplinary Counsel v. Scribner*, 2023-Ohio-4017, and several other cases in which we imposed partially or fully stayed term suspensions for misconduct that included the misappropriation of client funds and failure to maintain required client-trust-account records. *See, e.g.*, *Trumbull Cty. Bar Assn. v. Dull*, 2017-Ohio-8774; *Disciplinary Counsel v. Corner*, 2016-Ohio-359; *Disciplinary Counsel v. Joltin*, 2016-Ohio-8168; *Disciplinary Counsel v. Coleman*, 2015-Ohio-2489; *Disciplinary Counsel v. Gorby*, 2015-Ohio-476. Relator joins Smith in urging this court to impose a two-year suspension with 18 months conditionally stayed for Smith's misconduct.

## III. ANALYSIS

{¶ 21} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 22} In this case, Smith admitted that he failed to hold property belonging to clients and third persons in his client trust account and that he engaged in dishonesty, fraud, and deceit by misappropriating nearly $20,000 in funds that were owed to a client and to the creditor of four additional clients. He also admitted that he failed to deliver those funds to the intended recipients and to maintain required records regarding the funds held in his client trust account, that he failed to reduce Javey's contingent-fee agreement to writing, and that he failed to inform Javey that he did not carry professional-liability insurance while representing her. We adopt the board's findings that Smith's misconduct violated Prof.Cond.R. 1.15(a), 1.15(a)(2), 1.15(a)(5), 1.15(d), 8.4(c), 1.5(c)(1), and 1.4(c).

{¶ 23} We begin our consideration of the appropriate sanction for that misconduct with the presumption that disbarment is the appropriate sanction for the

misappropriation of client funds. *Disciplinary Counsel v. Burchinal*, 2012-Ohio-3882, ¶ 17. That sanction, however, "may be tempered with sufficient evidence of mitigating or extenuating circumstances." *Disciplinary Counsel v. Edwards*, 2012-Ohio-5643, ¶ 18. We have also recognized that "[a]n attorney who has been convicted of felony theft offenses has violated the basic professional duty to act with honesty and integrity." *Cincinnati Bar Assn. v. Blankemeyer*, 2006-Ohio-2038, ¶ 12. Moreover, we have held that "[w]hen an attorney engages in a course of conduct [involving dishonesty, fraud, deceit, or misrepresentation], the attorney will be actually suspended from the practice of law for an appropriate time." *Disciplinary Counsel v. Fowerbaugh*, 1995-Ohio-261, syllabus.

{¶ 24} We have permanently disbarred attorneys with a history of prior discipline whose subsequent misconduct included the misappropriation of funds and at least one felony conviction. However, the facts and circumstances of those cases were far more egregious than those of this case. *See Disciplinary Counsel v. Crosby*, 2012-Ohio-2872 (attorney who misappropriated $80,000 in client funds and pleaded guilty to felony charges of attempted income-tax evasion for which he was ordered to make restitution of more than $300,000 to the Internal Revenue Service permanently disbarred); *Disciplinary Counsel v. Muhlbach*, 2004-Ohio-6563 (attorney convicted of theft for misappropriating nearly $25,000 in trust distributions belonging to two children for whom he served as court-appointed custodian permanently disbarred); *Disciplinary Counsel v. Burchinal*, 2021-Ohio-774 (attorney convicted of theft for misappropriating more than $41,300 from a client and who continued to practice law while his license was under suspension and lied to several clients and three separate tribunals permanently disbarred). The board found in this case, and we agree, that there is sufficient evidence of mitigating and extenuating circumstances to justify a departure from the presumptive sanction of disbarment.

{¶ 25} We imposed an indefinite suspension on an attorney who had previously been disciplined for converting client funds and later engaged in similar acts of misconduct. *See Cincinnati Bar Assn. v. Rothermel*, 2004-Ohio-6559 (attorney who misappropriated nearly $13,000 in life-insurance proceeds that were to be used to pay the debts of his client's deceased husband, and who had previously been suspended for engaging in similar misconduct 20 years earlier, indefinitely suspended). We have also indefinitely suspended attorneys who had no history of prior discipline, were convicted of crimes for misappropriating client funds, and engaged in other related acts of professional misconduct similar to Smith's. *See, e.g.*, *Disciplinary Counsel v. Zapor*, 2010-Ohio-5679 (attorney convicted of felony theft for misappropriating more than $20,000 from his ward while serving as court-appointed guardian and making false statements to a tribunal to conceal his misconduct indefinitely suspended); *Disciplinary Counsel v. Buttars*, 2020-Ohio-1511 (attorney convicted of fourth-degree felony theft for misappropriating more than $57,000 from a client who was a person in a protected class, charging the client more than $90,000 in fees for what he later stipulated was less than $20,000 worth of work, and falsely representing to probate court that he had waived all fees in the case, indefinitely suspended).

{¶ 26} While the board suggested that our precedent in cases like *Rothermel*, *Zapor*, and *Buttars* might support the imposition of an indefinite suspension for Smith's misconduct in this case, it found that such a suspension would be "too harsh" under the circumstances presented here. Indeed, we find that Smith did not take advantage of his position as a court-appointed guardian or make false statements to one or more tribunals as Buttars and Zapor did. Also, Smith misappropriated a small portion of client funds compared to the amount Buttars either misappropriated or overcharged his client—and there was no evidence in this case that Javey was a particularly vulnerable client, as Buttars's client was. Additionally, Smith established the existence of mitigating mental disorders—a

significant mitigating factor that was not present in *Rothermel*, *Zapor*, or *Buttars*. On these facts, we agree that the appropriate sanction in this case is something less than an indefinite suspension.

{¶ 27} Before the board, the parties relied primarily on *Scribner*, 2023-Ohio-4017, to support their proposed sanction of a two-year suspension with 18 months conditionally stayed. In that case, Scribner admitted that he had withdrawn over $73,000 in cash (more than triple the amount at issue in this case) from his client trust account over a six-year period and that given his failure to maintain the required accounting records, it was impossible to connect those withdrawals to particular clients. *Id*. at ¶ 6. Scribner further admitted that he mismanaged settlement funds belonging to nine personal-injury clients and misappropriated portions of the settlement proceeds belonging to seven of those clients, either to cover his own expenses or to reimburse funds that he had misappropriated from other clients. *Id*. at ¶ 7. In addition to committing most of the same rule violations at issue in this case, Scribner failed to maintain copies of signed contingent-fee agreements, failed to maintain individual client ledgers, commingled personal and client funds, failed to deposit unearned fees into his client trust account, and provided financial assistance to a client in connection with pending or contemplated litigation. *Id*. at ¶ 12, 14.

{¶ 28} As aggravating factors, Scribner, like Smith, acted with a dishonest or selfish motive, engaged in a pattern of misconduct, and committed multiple offenses—though he did not have any prior discipline, *id.* at ¶ 16. Scribner also stipulated that his clients were vulnerable—and we found that some of them experienced delays in the distribution of their settlement proceeds. *Id.* In mitigation, Scribner, like Smith, made a timely, good-faith effort to make restitution, cooperated in the disciplinary investigation, presented evidence of his good character, accepted responsibility for his actions, and expressed genuine remorse for his misconduct, *id.* In addition, Scribner voluntarily completed a CLE

course focused on client-trust-account management before his disciplinary hearing. *Id*. Although Scribner testified that he experienced mental-health issues during the time of his misconduct and that he had entered into a contract with the Ohio Lawyers Assistance Program ("OLAP"), he did not attempt to establish any mental disorder as a mitigating factor under Gov.Bar R. V(13)(C)(7), *Scribner* at ¶ 17, as Smith has successfully done in this case.

{¶ 29} Weighing those factors, we suspended Scribner from the practice of law for two years with 18 months stayed on the condition that he commit no further misconduct, with the additional requirements that he satisfy certain conditions prior to reinstatement and serve a one-year period of monitored probation. *Id*. at ¶ 24.

{¶ 30} Here, the board emphasized that in contrast to Scribner, who was not convicted of any crime and had no prior discipline, Smith has now been convicted of two felony offenses and has a history of prior discipline. The board also acknowledged that by the time of his disciplinary hearing, Smith had made full restitution by paying $10,500 to Chagrin and delivering Javey's entire $12,000 settlement to her without collecting a fee for his services.

{¶ 31} The board afforded Smith some credit for his remorse and his efforts to improve his mental health. It expressed concern, however, that Smith's only explanation for his misappropriation of funds was that he "guess[ed]" it was "just desperation" and that he was "trying to stay afloat." The board also expressed concern that Smith had done little to demonstrate that he understands how to properly manage a client trust account or that he had made any effort to learn. The board also dismissed Smith's expressed willingness to work with a monitoring attorney, noting that while he had consulted with two attorneys who were willing to help him in that regard, he did not explain what suggestions those attorneys had made or what procedures they might implement to help Smith improve his practice management.

**{¶ 32}** We note that in his testimony before the panel, Smith acknowledged that he needed more training to put the proper procedures in place to ensure that he does not repeat his misconduct. He suggested, however, that his primary focus during the pendency of the disciplinary proceeding had been to resolve as many of his cases as possible before being suspended for his misconduct. He further stated that a six-month actual suspension would give him time to put the proper office- and client-trust-account-management procedures in place. Smith also expressed a desire to work for the Legal Aid Society or another employer so that he "could practice law and not have to worry about . . . the business of law."

**{¶ 33}** The board concluded that Smith "needs more than six months to get his personal and professional life in order." Emphasizing the need to protect the public from further misappropriation of client funds by Smith during times of financial difficulty, the board concluded that the parties' proposed sanction of a two-year suspension with 18 months conditionally stayed was insufficient to protect the public and to demonstrate to the bar and the public that this type of misconduct will not be tolerated. The board therefore recommended that Smith be suspended from the practice of law for two years with no stay.

**{¶ 34}** In his objections to the board's recommended sanction, Smith contends that the board placed too much weight on his 30-year-old disciplinary offense and not enough weight on the mitigating factors present in this case.

**{¶ 35}** In addition to recognizing that "[e]ach disciplinary case involves unique facts and circumstances," Gov.Bar R. V(13)(A) directs the board to "consider all relevant factors," our precedent, and the aggravating and mitigating factors set forth in that section of the rule. The first aggravating factor addressed in section (B) of that rule is "[p]rior disciplinary offenses." The rule does not provide a time frame for determining the relevance of the prior discipline, leaving it to the board—and ultimately this court—to determine the relevance and weight of the prior offense based on the unique facts and circumstances of the case.

**{¶ 36}** We have, on occasion, considered prior misconduct to be an aggravating factor 20 years or more after initial discipline was imposed on an attorney. *See, e.g.*, *Rothermel*, 2004-Ohio-6559, at ¶ 1, 15 (considering a 20-year-old disciplinary offense for similar client-related misconduct to be an aggravating factor); *Akron Bar Assn. v. Goodlet*, 2003-Ohio-3935, ¶ 6, 9 (considering a 21-year-old disciplinary offense for dissimilar client-related misconduct to be an aggravating factor). But Smith's prior misconduct is even more remote in time, having occurred nearly 30 years before the conduct at issue in this case. And while both his past and present offenses involve dishonesty, theft, and poor decision making, Smith's past offense did not involve any of the client-related misconduct presently at issue. Yet the board attributed far more weight to Smith's 30-year-old disciplinary offense as an aggravating factor than it did to multiple *current* mitigating factors, including Smith's acknowledgment of his misconduct, his efforts to rectify the consequences of that misconduct, and his cooperation in the disciplinary proceeding, beginning with his admission to most of the facts and all the misconduct in his answer to the complaint.

**{¶ 37}** The board also attributed more weight to Smith's 30-year-old disciplinary offense than it did to his mitigating mental disorders, namely his ADHD and unspecified anxiety and depressive disorder. Sarah Iannone, a licensed independent social-worker supervisor involved in Smith's treatment, prepared a report stating that Smith first sought diagnosis and treatment for his disorders on June 1, 2020. She noted that at that time, Smith "was concerned about his ability to focus and follow through with tasks at work and at home." She opined that Smith's anxiety and depression "put [him] in an untenable position emotionally and cognitively" and that "[t]his became the perfect psychological storm that [a]ffected his ability to perform his job as a lawyer." The social worker further reported that Smith participated in counseling on a regular basis through June 8, 2023, and that as of December 2023, he continued to seek counseling when necessary. Iannone

reported that Smith also had been prescribed medication to treat his depression and ADHD and that he has reported improved clarity and an ability to focus with use of those medications. Moreover, she opined that Smith's prognosis is good and that "[t]herapy and medication have helped him learn how to effectively manage himself and his job."

**{¶ 38}** On the facts of this case, we conclude that Smith's current and qualifying mental disorders coupled with his corresponding three-year period of successful treatment should weigh more strongly in mitigation than his 30-year-old disciplinary offense should weigh in aggravation. Combining these strong mitigating facts with Smith's full cooperation in the disciplinary process, beginning with his admissions in answer to each of the allegations of relator's complaint, his payment of restitution and waiver of his fee in the Javey case, his evidence of good character and reputation, and his history of providing legal services to an underserved community—often on a pro bono basis—we agree that the facts of this case are most similar to those of *Scribner*.

**{¶ 39}** We therefore sustain Smith's objection to the board's report and recommendation and conclude that the appropriate sanction for Smith's misconduct in this case is a two-year suspension with 18 months stayed on the conditions that he engage in no further misconduct and complete six hours of CLE focused on law-office and client-trust-account management in addition to the requirements of Gov.Bar R. X. Upon reinstatement to the profession, Smith shall be required to serve an 18-month period of monitored probation in accordance with Gov.Bar R. V(21) to aid him in adopting and implementing policies and practices to ensure his compliance with the Ohio Rules of Professional Conduct moving forward.

**{¶ 40}** Our review of the additional cases cited by Smith and relator supports this sanction. *See, e.g.*, *Dull*, 2017-Ohio-8774, at ¶ 15, 17 (two-year suspension with one year conditionally stayed imposed on attorney who misappropriated $37,000 in client funds and failed to maintain required client-trust-

account records); *Corner*, 2016-Ohio-359, at ¶ 11, 12, 16, 44 (two-year suspension with one year conditionally stayed imposed on attorney for misconduct that included using client funds to pay the attorney's personal and business expenses, making false representations to a client about the delayed distribution of settlement proceeds, failing to provide competent representation to a client, and engaging in conduct prejudicial to the administration of justice); *Joltin*, 2016-Ohio-8168, at ¶ 4, 5, 8, 9, 14, 34 (two-year suspension with one year conditionally stayed imposed on attorney for misconduct that included misappropriating $18,000 in client funds, lying to a client about the reason a client-trust-account check had been dishonored, neglecting another client's legal matter, and failing to cooperate in several disciplinary investigations); *Coleman*, 2015-Ohio-2489, at ¶ 5, 6, 17 (two-year suspension with 18 months conditionally stayed imposed on attorney for misconduct that included falsely assuring client that $18,000 entrusted to the attorney was being held in trust when the funds had been misappropriated); *Gorby*, 2015-Ohio-476, at ¶ 8, 9, 11, 13, 28 (one-year stayed suspension imposed on attorney for misconduct that included misappropriating $6,400 that belonged to family members who were also attorney's clients and misrepresenting the status of those funds to the relator).

## IV. CONCLUSION

{¶ 41} Accordingly, Robert Smith III is suspended from the practice of law for two years with 18 months stayed on the conditions that he engage in no further misconduct and complete six hours of CLE focused on law-office and client-trust-account management in addition to the requirements of Gov.Bar R. X. If Smith fails to comply with the conditions of the stay, the stay will be revoked and he will serve the full two-year suspension. Upon reinstatement to the profession, he shall serve an 18-month period of monitored probation in accordance with Gov.Bar R. V(21). Costs are taxed to Smith.

Judgment accordingly.

_____

Christopher Joseph Klasa, Bar Counsel; and Nelson Mullins Riley & Scarborough, L.L.P., and Savannah M. Fox, for relator.

James L. Hardiman, for respondent.

_____